UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
CHRISTINE A. BERGERSON,

                Plaintiff,

  -v-                                                  6:06-CV-1476

NEW YORK STATE OFFICE OF MENTAL
HEALTH, CENTRAL NEW YORK
PSYCHIATRIC CENTER,

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                  OF COUNSEL:

PAUL N. CISTERNINO, ESQ.
Attorney for Plaintiff
701 Westchester Avenue, Suite 308W
White Plains, NY 10604

HON. ANDREW M. CUOMO              SENTA B. SUIDA, ESQ.
Attorney General for the State of New York   Ass't Attorney General
Attorney for Defendants
615 Erie Boulevard West
Suite 102
Syracuse, NY 13204

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

      Plaintiff Christine A. Bergerson ("Bergerson") filed the complaint in this matter on December 8, 2006, alleging various discrimination claims based upon racial affiliation pursuant to Title VII of the federal Civil Rights Act of 1964, as amended, and the New York Human Rights Law. Defendant New York State Office of Mental Health, Central New York Psychiatric Center ("the Center") moved for summary judgment. Plaintiff opposed except as

to the state law claims. Oral argument was heard on August 8, 2008, in Utica, New York. Decision was reserved.

## II. BACKGROUND

### A. Undisputed Facts

Bergerson began her employment at the Center on September 10, 2004. At the time of her appointment she was subject to a 52-week probationary period.

Plaintiff's performance was evaluated five times. During the probationary period an evaluation could result in termination or continuation of probation. Her first evaluation in December 2004 reflected an average rating for all categories except "Relationship with People." The evaluator's comment in rating her below average in that category was that she needed to work on acceptance by her peers.

Plaintiff's second evaluation took place on March 14, 2005. She was rated average in four categories. However, she was rated below average in the "Relationship with People" category and unacceptable in "Quality of Work," "Work Habits, Work Interest," and "Attendance" categories. There were comments written in the "additional information" section indicating that Bergerson should have more knowledge of policy and procedure, follow protocol, be able to keep track of her keys, as well as know the census and the whereabouts of her patients at all times. It was recommended that probation be continued.

Plaintiff's third evaluation on June 12, 2005, reflected an average rating in all categories. The "additional information" section indicated plaintiff was to attend some specific training and other training as directed. It was again recommended that probation be continued.

Plaintiff's fourth evaluation was completed on September 3, 2005. She was rated average in five categories and below average in the "Relationship with People" and "Reaction to Supervisor" categories. Additionally, she was ranked unacceptable in "Attendance" with a notation that her direct supervisor was unable to properly evaluate her performance because she did so many mutuals/swaps she rarely worked her scheduled time and shift. It was noted that she would be restricted from doing mutuals and swaps so that her direct supervisor could complete her next evaluation. It was also noted that she did not have unscheduled absences and she was always on time. Again, specific training and training as directed was specified. Shortly thereafter, on September 12, 2005, the Center extended Bergerson's probation an additional six months.

Bergerson's fifth and final evaluation was completed on January 18, 2006. The evaluator ranked plaintiff average in "Written and Oral Presentation." Her ranking was below average in "Quality of Work," "Work Habits, Work Interest," "Attendance," and "Analytical and Problem Solving Abilities." She was ranked unacceptable in "Resourcefulness," "Relationship with People," and "Reaction to Supervisor." There were no additional comments.

On January 24, 2006, the Center notified plaintiff that her employment was terminated effective January 31, 2006, and she would be on administrative leave until that date. Plaintiff requested an interview, to which she was entitled. The interview took place on January 31, 2006. On February 9, 2006, Bergerson was informed by letter that no new information surfaced at the interview which would overturn the termination decision.

### B. Disputed Facts

Plaintiff has adduced facts to show that the reason for her termination was pretextual. For example, the fourth evaluation on September 3, 2005, based extending her probation an additional six months on her excessive use of mutuals. "Mutuals" are shift swaps between employees. When one employee had a conflict with the work schedule to which he or she was assigned, the first employee could find a second employee who would work that shift, then the first employee would cover one of the second employee's shifts, as agreed. In addition to the two employees, their supervisors were required to approve such mutuals. After the extension of her probation, Bergerson went to a union representative. The union representative inquired about her extension and was told that the extension was because plaintiff used too many mutuals and therefore was not on the job on her assigned shift often enough. However, plaintiff has elicited testimony from other employees who have said that excessive mutuals has never been a basis for termination, and that since the supervisor must approve the mutual it should not be a negative. Moreover, use of mutuals benefitted the Center because if an employee had a conflict because of, for example, a doctor's appointment, the employee could use a mutual rather than take sick leave. It is unnecessary to delve into further details of disputed facts relating to pretext, because on its motion for summary judgment defendant's only arguments pertaining to the merits of plaintiff's claims relate to her failure to establish a prima facie case.

Although the timing of some of the occurrences about which plaintiff has presented evidence is unclear, defendant submitted nothing to controvert plaintiff's evidence. Thus, while the facts surrounding the occurrences are in dispute, the facts viewed in the light most favorable to plaintiff as the non-movant are set forth below.

From the time Bergerson began her employment at the Center derogatory sexual comments were made about females in general and plaintiff in particular by coworkers. Many employees expressed the opinion that the Center was not an appropriate place for females to work. Jokes, wise-cracks, and comments such as "women should stay barefoot and pregnant" were common. At least one poster was hung portraying plaintiff in a lewd manner. Commonly, computer screen savers inferring lewd conduct were displayed in work areas to which Bergerson was exposed. Sexual comments were made about plaintiff, who is white, her alleged promiscuity, and her alleged attraction to African-American men. One African-American coworker was told he should hook up with plaintiff because she "does the bros." Coworkers made comments about the type of undergarments plaintiff wore. Rumors were spread about her dating and sex life, and she was blamed for the breakup of a coworker's marriage. It was also rumored that Bergerson was having sex with facility doctors in exchange for money. Racial comments were also made to her, such as "once you go black you don't go back."

Rumors were also spread about plaintiff dating an African-American supervisor, Keith Richardson, although they were just friends. At the time of her June 12, 2005, evaluation, plaintiff was told by her evaluator that the relationship with Richardson was not in her best interest to continue. In the past Richardson had an inter-racial dating relationship and the woman was harassed and mistreated during her work at the Center. Further, other coworkers have told Richardson that certain Center employees do not like him dating inter-racially. According to another employee of the Center, Scott Martin, other employees looked down on interracial dating. Martin further believed that Bergerson's being female and other employee's narrow-mindedness were factors in her termination.

Plaintiff made multiple complaints to supervisors, to no avail.  In one instance a female supervisor responded to plaintiff's complaints by telling her that it was a man's environment and she should just deal with it.  At one point she also took advantage of counseling through the Employee Assistance Program.

Plaintiff eventually did begin an interracial dating relationship with Richardson.  Although plaintiff in her deposition stated that the dating relationship with him occurred only in the last few months she worked at the Center, Richardson testified in deposition that he started dating Bergerson some time between April and September 2005, before her probation was extended in September 2005.

## III. STANDARDS

### A. Summary Judgment

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986).  The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986).  Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).

When the moving party has met the burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586, 106 S. Ct. at 1356.  At that point, the nonmoving party "must set forth specific facts showing

that there is a genuine issue for trial." Fed. R. Civ. P. 56; Liberty Lobby, Inc., 477 U.S. at 250, 106 S. Ct. at 2511; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.  To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant.  Liberty Lobby, Inc., 477 U.S. at 248-49, 106 S. Ct. at 2510; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.

### B.  Title VII

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Accordingly, "Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult."  Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65, 106 S. Ct. 2399, 2404 (1986).

The initial burden of establishing a prima facie case of discrimination is upon the plaintiff.  Holcomb v. Iona College, 521 F.3d 130, 138 (2d Cir. 2008).  This burden "'is not onerous.'" Id. (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 1094 (1981)).  If a plaintiff establishes a prima facie case, he "creates a presumption that the employer unlawfully discriminated" against him.  Burdine, 450 U.S. at 254, 101 S. Ct. at 1094; Holcomb, 521 F.3d at 138.

A prima facie case of discrimination is established by showing that (1) plaintiff was a member of a protected class; "(2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent."  Holcomb,

521 F.3d at 138. Similarly, a prima facie case of hostile work environment discrimination is established by showing that (1) she is a member of a protected group; (2) she was the subject of unwelcome advances; (3) the harassment was based upon her sex; and (4) the harassment affected a term, condition or privilege of her employment. See Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1042 (2d Cir. 1993).

In order to rebut this presumption of discrimination, the burden shifts to defendant to produce a legitimate, nondiscriminatory reason for the adverse personnel action. Burdine, 450 U.S. at 254, 101 S. Ct. at 1094; McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824-25 (1973); Holcomb, 521 F.3d at 138. Once a defendant "articulate[s] 'some legitimate, non-discriminatory reason' for its action," the plaintiff "may still prevail by showing, without the benefit of the presumption, that the employer's determination was in fact the result of racial discrimination." Holcomb, 521 F.3d at 138 (quoting McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. at 1824). It is not necessary for the plaintiff to prove that the proffered reasons were false but rather "'only that the prohibited factor was at least one of the "motivating' factors.'" Id. (quoting Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 203 (2d Cir. 1995)). However, rarely is direct evidence of discriminatory intent available. Id. at 141. Accordingly, plaintiffs may establish discriminatory intent with circumstantial evidence. Id. Further, "in many cases, a showing of pretext, when combined with a prima facie case of discrimination, will be enough to permit a rational finder of fact to decide that the decision was motivated by an improper motive." Id.

## IV. **DISCUSSION**

Plaintiff withdraws her state law claims, causes of action two, four, and six. She concedes that she did not exhaust her administrative remedies as to the retaliation claim,

cause of action five; therefore, the retaliation claim must be dismissed. The only remaining claims are cause of action one, a disparate treatment claim based upon racial affiliation and cause of action three, a hostile work environment claim. However, plaintiff agrees that the statute of limitations bars any evidence as to disparate treatment or hostile work environment prior to June 25, 2005.

As noted, defendant contends that it is entitled to summary judgment on these claims because plaintiff cannot establish a prima facie case. With regard to plaintiff's disparate treatment claim, defendant argues that Bergerson cannot establish that she was in a protected class, or that there was a causal connection between her interracial dating and her termination.

The Second Circuit has unequivocally held that "an employer may violate Title VII if it takes action against an employee because of the employee's association with a person of another race." Holcomb, 521 F.3d at 138. Defendant argues that Bergerson's claim of interracial association discrimination is "too tenuous" to establish a prima facie case because she testified she only dated him in the last month or two of her employment at the Center. However, plaintiff adduced evidence that rumors abounded throughout the staff that she was having an interracial relationship with Richardson well before they actually started dating. Additionally, according to Richardson, he starting dating Bergerson in the few months prior to her probation extension. Plaintiff also adduced evidence that many coworkers commented derogatorily about her alleged proclivity toward interracial personal relationships. Plaintiff has established a sufficient association with a person of another race to be protected against discrimination on the basis of that association. See Holcomb, 521 F.3d at 138.

Defendant also argues that there was no connection between plaintiff's termination and her dating Richardson so that she cannot establish the fourth element of her prima facie case. A causal connection can be established either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Gordon v. New York City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000).

According to defendant, the lack of a connection is demonstrated by the four other individuals in the same job title who were terminated during their probation between September 2005 and April 2006. Plaintiff has adduced evidence that there was animosity toward interracial dating, such as comments made by Center employees and Richardson's experience with a former interracial dating relationship. Bergerson set forth the testimony of Martin, the union representative, who opined that she was terminated, at least in part, because of the narrow mindedness of employees of the Center. The inference in plaintiff's favor taken from this testimony is that the narrow-minded employees were against interracial dating.

Further, although it is unclear when plaintiff and Richardson started dating, the timing could be sufficiently related to raise an inference of discrimination, particularly in light of the other evidence of discriminatory intent adduced by Bergerson. Rumors of the interracial dating relationship between plaintiff and Richardson began prior to the relationship starting, but before her third evaluation. During her third evaluation she was told that the relationship was not good for her to continue. The very next evaluation extended her

probation, which led to her termination. According to Richardson, he started dating plaintiff in the time frame after April and before September 2005. If this is the time frame which the jury credits, the dating relationship began just shortly before the extension of plaintiff's probation leading to her eventual termination. Finally, if the jury credits plaintiff's deposition testimony that she began dating Richardson within the last few months of her employment at the Center, her termination would have shortly followed the initiation of the relationship.

In sum Bergerson has set forth circumstantial evidence of disparate treatment based upon interracial associations as well as temporal proximity. Thus, plaintiff has adduced sufficient evidence to meet her minimal burden of establishing a prima facie case. See Holcomb, 521 F.3d at 139 (noting that in St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506, 113 S. Ct. 2742, 2747 (1993), the Supreme Court described as minimal the low threshold of evidence needed to establish a prima facie case).

With regard to Bergerson's hostile work environment claim, defendant argues that plaintiff's prima facie case lacks a showing that the conduct was severe and pervasive. In the context of a hostile work environment case, a plaintiff establishes that harassment affected a term, condition, or privilege of her employment by showing that the harassment is "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive environment." Meritor Sav. Bank, FSB, 477 U.S. at 67, 106 S. Ct. at 2405 (internal quotation omitted).

Bergerson has adduced evidence that coworkers used profanity and offensive language, and that sexually suggestive screen savers were used on computers. She submitted evidence that some employees at the Center did not think it was appropriate for females to work there, and apparently were not reticent to say so. She also set forth

evidence of derogatory comments by coworkers about her sex life, her alleged proclivity toward interracial sexual relationships, and her undergarments.  Once such comment was "once you go black you don't go back."  Rumors were spread that she broke up a coworker's marriage, and that she was having sex for money with facility physicians.  At least one poster was hung portraying plaintiff in a possibly offensive manner.

Although it is a close question in this case, given the fact-specific nature of the determination it is best left for the jury to decide whether the work environment is sufficiently hostile so as to constitute a change in the term, condition, or privilege of Bergerson's employment.  See Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 605 (2d Cir. 2006) (noting that the question is "'especially well-suited for jury determination,'" and even where the facts are undisputed "'summary judgment is appropriate only where application of the law to those undisputed facts will reasonably support only one ultimate conclusion'" (quoting Richardson v. N.Y. State Dep't of Corr. Servs., 180 F.3d 426, 438 (2d Cir. 1999)).  This is particularly true in a case such as this where Bergerson's other claim for disparate treatment must go to the jury, and a substantial amount of the evidence on the hostile work environment claim would also require presentation for the disparate treatment claim.  In this case there would be little if any additional evidence required for the hostile work environment claim.  Plaintiff has adduced sufficient evidence of a hostile work environment to establish a prima facie case and withstand defendant's summary judgment motion.

## V.  CONCLUSION

Bergerson is not pursuing causes of action two, four, five, and six.  Those causes of action will be dismissed.

Plaintiff has adduced sufficient evidence to establish a prima facie case of disparate treatment based upon her racial affiliation, and a hostile work environment.  Thus, defendant's motions for summary judgment as to causes of action one and three will be denied.

Accordingly, it is

ORDERED that

1.  Causes of action two, four, five, and six are DISMISSED as abandoned by plaintiff;

2.  Defendant's motion for summary judgment as to causes of action one and three is DENIED; and

3.  Plaintiff is precluded at trial from offering evidence of occurrences prior to June 21, 2005.

IT IS SO ORDERED.

_____
David N. Hurd
District Judge

Dated: April 21, 2009
       Utica, New York.