UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CHRISTINE A. BERGERSON,

                              Plaintiff,

         -v-                              No. 6:06-CV-1476

NEW YORK STATE OFFICE OF MENTAL
HEALTH, CENTRAL NEW YORK
PSYCHIATRIC CENTER,

                              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                    OF COUNSEL:

BOSMAN LAW FIRM, LLC            A.J. BOSMAN, ESQ.
Attorneys for Plaintiff
6599 Martin Street
Rome, NY  13440

HON. ERIC T. SCHNEIDERMAN       HEATHER R. RUBINSTEIN, ESQ.
Attorney General for the State of New York    Ass't Attorney General
Attorney for Defendant
615 Erie Boulevard West
Suite 102
Syracuse, NY  13204


DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

Following a trial in October 2009, the jury awarded plaintiff Christine Bergerson[1]

("plaintiff" or "Bergerson") $580,000 in compensatory damages for discriminatory termination.

---

[1] Since filing this action plaintiff has resumed using her maiden name, Christine Fuller.  However, she will be referred to as Christine Bergerson in this order, as she has been throughout the proceedings.

This award was subsequently reduced to the statutory cap of $300,000, plaintiff's counsel was awarded attorneys' fees based on a $210 hourly rate, and defendant's post-trial motion to bar any award of back pay was granted.  See Bergerson v. N.Y. State Office of Mental Health, 2010 WL 610694 (N.D.N.Y. 2010).  The judgment was entered on February 17, 2010.  Dkt. No. 77.

Plaintiff appealed to the United States Court of Appeals for the Second Circuit, challenging:  (1) the grant of defendant's motion barring back pay; (2) the pre-trial dismissal of her state law claims; and (3) the reduced attorneys' fees rate.  The Second Circuit affirmed the dismissal of the state law claims and the attorneys' fees rate, but ordered an inquest as to whether plaintiff should be awarded back pay and, if reinstatement is inappropriate, front pay.  Bergerson v. N.Y. State Office of Mental Health, 652 F.3d 277 (2d Cir. 2011).

On October 5, 2011, a hearing was held pursuant to the Second Circuit's mandate.  At the hearing, the parties stipulated that reinstatement is inappropriate.  The parties have submitted proposed findings of fact and conclusions of law.  Dkt. Nos. 117, 118.  Plaintiff has also filed a motion for attorneys' fees and costs related to her appeal.  Dkt. No. 116.  Defendant has responded to this motion.  Dkt. No. 122.

## II. FINDINGS OF FACT

The following facts are based on the parties' written submissions as well as the testimony and evidence provided at the October 5, 2011, hearing.[2]

Bergerson has a General Equivalency Diploma ("GED").  She began working as a Security Hospital Treatment Aide ("SHTA"), Grade 14, at Central New York Psychiatric

---

[2] Citations to the transcript of the hearing will referenced with "Tr. ___."  Exhibits admitted into evidence at the hearing will be cited as "Hr'g Ex. ___."

Center ("CNYPC") on September 2, 2004.[3]  Plaintiff's 2005 tax return indicates that she earned a total of $61,452 in salary and overtime from CNYPC.  Hr'g Ex. PF.  Her base salary in 2005 was $36,124.  Hr'g Ex. PD.

Bergerson was terminated on January 31, 2006.  She promptly contacted the New York Civil Service Department in Albany and was placed back on the civil service employment list.  As a result, she received several "canvas letters" regarding available positions within the Office of Mental Health.  Tr. 26:5.  She interviewed for some positions but was unable to obtain employment.  Bergerson also sought employment outside of the civil service channels and began working for Birnie Bus Service ("Birnie Bus") as a full-time bus driver in September 2006.  She was not provided with health insurance or benefits.  In 2006 plaintiff received $10,530 in unemployment payments and earned $10,737.53 from CNYPC and $2756.54 from Birnie Bus.  Hr'g Ex. D2.

In May 2007 plaintiff left Birnie Bus and started working at the St. Lawrence Psychiatric Center ("SLPC") in a full-time, Grade 11, position on May 10.  Her base salary at SLPC was $32,138, and she received health insurance and benefits.  Hr'g Ex. PD.  Plaintiff held this employment until September 26, 2007, when she resigned due to the lengthy commute and associated time away from her family, and a lack of overtime offered.  Plaintiff then returned to work at Birnie Bus on a full-time basis.  She earned a total of $22,361.35 in 2007—$10,646.72 from Birnie Bus and $11,714.63 from SLPC.  Hr'g Ex. D2.  Assuming she

---

[3]  Plaintiff began her employment on a one-year probationary status.  The parties dispute whether plaintiff became a permanent employee in September 2005 by virtue of defendant's failure to timely extend her probationary period.  However, as the parties acknowledged at the hearing and in their proposed findings of fact, plaintiff's status as a permanent or probationary employee has no bearing on an award of back or front pay.  Therefore, this issue will not be addressed.

was paid a consistent amount by Birnie Bus, plaintiff earned $6181.97 for the eighteen weeks prior to her employment with SLPC and $4464.75 for the thirteen weeks after her resignation from SLPC.

In January 2008 Bergerson began working part-time at the New York School for the Deaf. She continued to work part-time at Birnie Bus as well. Her employment with the School for the Deaf ended in September 2010 after a teenager alleged that plaintiff assaulted her. Bergerson continued to work part-time at Birnie Bus until March 2011, when she was suspended after receiving a speeding ticket. Plaintiff simply did not return to Birnie Bus and has received unemployment payments since March 2011.

At the hearing, plaintiff called four current employees of CNYPC who hold the same Grade 14 SHTA position she held prior to her termination. These employees made it clear that they receive an annual increase in salary and work thousands of hours of overtime every year. They also testified that the availability of overtime greatly increased in 2008 due to budget constraints and a hiring freeze. The testimony regarding their individual annual earnings will be discussed in greater detail below. The principal payroll clerk at CNYPC testified that during the relevant time, CNYPC employees received an annual raise of four percent. Tr. 175:10.

Since her termination from CNYPC, Bergerson has sporadically attended mental health counseling and occasionally taken prescription medications for post traumatic stress syndrome. At the hearing, plaintiff called a psychotherapist, Helene Shulkin, to testify about the impact her mental health condition has on her ability to secure comparable employment. However, Ms. Shulkin primarily treats plaintiff's daughters and only "collaterally" meets with

plaintiff for family counseling sessions.  Tr. 137:8–9.  Further, Ms. Shulkin has been meeting

with plaintiff on a monthly basis for less than two years and is not the provider who

prescribes her medications.  Her opinion that plaintiff is unable to maintain comparable

employment due to the emotional distress she incurred as a result of her termination from

CNYPC is therefore not credible.

## III.  DISCUSSION

### A.  Back Pay

#### 1.  Standard

The purpose of back pay is "to restore the employee to the status quo [she] would

have enjoyed if the discriminatory discharge had not taken place."  Kirsch v. Fleet St., Ltd.,

148 F.3d 149, 166 (2d Cir. 1998) (internal quotation marks omitted).  While an award of back

pay is discretionary and may be denied if it would frustrate this purpose, a district court must

provide a sufficient explanation of its reasons for denying back pay.  Albemarle Paper Co. v.

Moody, 422 U.S. 405, 421 n.14, 95 S. Ct. 2362, 2373 (1975).

An award of back pay should be based on what the plaintiff would have earned had

she not been terminated.  Kirsch, 148 F.3d at 166.  When calculating this figure, a court may

consider evidence of the salaries paid to other employees if a proper foundation is laid "to

permit the reasonable inference that [her] salary would have matched or been pegged to the

salaries of others."  Id.  An award of back pay ordinarily spans from the date of plaintiff's

discriminatory termination to the date of judgment and includes "lost salary, including

anticipated raises, and fringe benefits."  Saulpaugh v. Monroe Cmty. Hosp., 4 F.3d 134,

144–45 (2d Cir. 1993).  Further, Title VII authorizes pre-judgment interest on back pay.  Id. at

145 (noting that failure to include pre-judgment interest is ordinarily an abuse of discretion).

### 2. Failure to Mitigate

An award of back pay can be offset by a plaintiff's failure to mitigate damages.  "An employee discharged in violation of Title VII has an obligation to attempt to mitigate her damages by using 'reasonable diligence in finding other suitable employment.'"  Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684, 695 (2d Cir. 1998) (quoting Ford Motor Co. v. E.E.O.C., 458 U.S. 219, 231, 102 S. Ct. 3057, 3065 (1982)).  The burden is on the defendant employer to demonstrate that the plaintiff has failed to mitigate.  Id.  This burden can be met by establishing that suitable work existed and the plaintiff "did not make reasonable efforts to obtain it."  Id.  Suitable employment entails that which is "substantially equivalent," but not necessarily identical, to plaintiff's former employment.  Ford Motor Co., 458 U.S. at 232, 102 S. Ct. at 3066.

"The ultimate question is whether the plaintiff acted reasonably in attempting to gain other employment or in rejecting proffered employment."  Hawkins, 163 F.3d at 695. (internal quotation marks omitted).  A plaintiff fails to mitigate damages when her voluntary resignation from comparable employment is motivated by personal reasons as opposed to unreasonable working conditions.  Id. at 696; see also Griffin v. Four Seasons Resorts & Hotels, Ltd., No. 96 Civ. 4759, 1999 WL 212679, at *1 (S.D.N.Y. Apr. 12, 1999) (highlighting "prevailing precedents that uniformly hold that a decision to forego comparable employment for personal reasons, however understandable, constitutes a failure to mitigate damages as a matter of law").

Defendant has met its burden to demonstrate that Bergerson failed to mitigate her

damages by resigning from her job at SLPC.  This was a full-time Grade 11 position within

the Office of Mental Health and provided health insurance and benefits.  The base salary of

$32,138, which was only slightly less than her base salary of $36,124 at CNYPC, would have

increased annually.  It was thus substantially equivalent to plaintiff's former position at

CNYPC.[4]  Bergerson failed to act reasonably when she voluntarily left this employment and

returned to Birnie Bus, where she earned substantially less money and was not provided with

insurance or benefits.  Plaintiff's reasons for resigning from SLPC—primarily the lengthy

commute, time away from her family, and loneliness in a new environment—are personal in

nature and do not amount to unreasonable working conditions.  Therefore, Bergerson is only

entitled to back pay from January 31, 2006, (the date of her termination from CNYPC) to

September 26, 2007, (the date she voluntarily resigned from her position at SLPC).

### 3. Back Pay Calculation

An award of back pay is determined by calculating the total lost salary, including

anticipated raises, and fringe benefits.  This total is then reduced by any income earned by

plaintiff during the same time period.  Because no testimony or evidence was offered

regarding the value of the health insurance plaintiff received at CNYPC, such will not be

included in the back pay calculation.  Indeed, plaintiff's own accountant did not include health

insurance in his calculations.  Further, plaintiff was provided with health insurance at SLPC.

Similarly, while employees of CNYPC receive retirement contributions and may

participate in a deferred compensation program, it would be complete speculation to assign a

specific value to these benefits.  There was no testimony regarding what percentage of

---

[4]  Indeed, plaintiff herself describes this position as "a similar job to a SHTA at lower pay."  Pl.'s
Proposed Findings of Fact ¶ 21.

annual earnings goes into an employee's retirement or deferred compensation account. Although plaintiff's accountant estimated her lost retirement income based on a three percent rate of her earnings, there is no evidence indicating that this percentage is accurate. Therefore, contributions to retirement and deferred compensation accounts will not be included in the back pay calculation.

In 2005, plaintiff earned $36,124 in base salary and $25,328 in overtime for a total of $61,452. Accounting for a four percent annual raise, plaintiff would have earned a base salary of $37,568.96 in 2006 and $39,071.72 in 2007.[5]  Assuming plaintiff would have worked a comparable amount of overtime in 2006 and 2007 as she did in 2005, she would have earned $26,323.83 in overtime in 2006 and $27,376.78 in 2007. Thus, had she not been terminated, plaintiff would have earned a total of $63,892.79 in 2006 and $66,448.50 in 2007. The 2007 total will be reduced to $48,971.63 to reflect the amount she would have earned up until September 26 of that year. This equals a total of $112,864.42 in lost salary and overtime from the date of Bergerson's termination from CNYPC to the date she resigned from SLPC.[6]

_____

[5]  The principal payroll clerk at CNYPC testified that all employees received an annual four percent increase during the relevant time. This is the only evidence from which to estimate the annual salary increase. Defendant referenced New York Civil Service Law § 130 but did not offer any guidance on how this statute impacts plaintiff's back pay calculation. Instead, defendant simply requests that the calculation of any award be left to the New York State Comptroller's Office. This request is denied.

[6]  These estimates are reasonable when compared to the annual earnings of the four CNYPC employees who testified at the hearing. Sheryl Bingham, who has worked as an SHTA for twenty years, earned $72,405; $64,899; and $71,664 in salary and overtime in 2005, 2006, and 2007 respectively. Tr. 161:20–25. William Devries, an SHTA for over eight years, earned $107,048; $113,761; and $110,404 respectively. Tr. 150:22–25. Laura Vincent began working as an SHTA in 2005 and earned $82,676 in 2006 and $82,206 in 2007. Tr. 187:4–8. Mark Luczak, who also began in 2005, earned a total of $51,373 in 2006 and $54,412 in 2007. Tr. 192:23–26. These numbers are used merely to show that each employee continued to work a similar amount of overtime each year. They do not directly factor into the projection of plaintiff's earnings. Indeed, it would be pure speculation to assume that plaintiff would have earned over

(continued…)

In 2006 plaintiff received $10,530 in unemployment payments and $2756.54 from her employment with Birnie Bus.  In 2007 she earned $6181.97 from Birnie Bus prior to taking a job at SLPC and $11,714.63 at SLPC.  Therefore, $31,183.14 will be deducted from the award of back pay for a total of $81,681.28.  Accounting for a 2.04% pre-judgment interest,[7] compounded annually from January 31, 2006, until this date,[8] gives a final back pay total of $92,516.53.

## B. Front Pay

An award of front pay is also discretionary and is intended to make "victims of discrimination whole in cases where the factfinder can reasonably predict that the plaintiff has no reasonable prospect of obtaining comparable alternative employment."  Padilla v. Metro-North Commuter R.R., 92 F.3d 117, 125–26 (2d Cir. 1996).  If a court specifically finds that a back pay award is sufficient to make the plaintiff whole, a denial of front pay is not an

---

[6](...continued)
$110,000 like Mr. Devries or, for that matter, under $55,000 like Mr. Luczak.  In short, the testimony of these four witnesses establishes nothing more than the fact that plaintiff would have likely worked the same amount of overtime hours in 2006 and 2007 as she did in 2005.

[7]  Pre-judgment interest is determined by applying the average one-year constant maturity Treasury yield for the relevant time period.  See 28 U.S.C. § 1961(a) (2006); Chisholm v. Mem'l Sloan-Kettering Cancer Ctr., ___ F. Supp. 2d ___, 2011 WL 5448251, at *5 (S.D.N.Y. 2011).  The annual average one-year constant maturity Treasury yield declined as follows from 2006 to 2011 respectively:  4.94%; 4.53%; 1.83%; 0.47%; 0.32%; and 0.18%.  See FEDERAL RESERVE, Selected Interest Rates (Apr. 2, 2012), http://www.federalreserve.gov/Releases/H15/data.htm.  Therefore, pre-judgment interest will be calculated using the average of these figures, or 2.04%.

[8]  The time period between the date of termination and the date of this order is six years and approximately two months.  Therefore, the calculation is as follows:
1) $81,681.28 + ($81,681.28 x .0204) = $83,347.58 (first year)
2) $83,347.58 + ($83,347.58 x .0204) = $85,047.87 (second year)
3) $85,047.87 + ($85,047.87 x .0204) = $86,782.85 (third year)
4) $86,782.85 + ($86,782.85 x .0204) = $88,553.22 (fourth year)
5) $88,553.22 + ($88,553.22 x .0204) = $90,359.70 (fifth year)
6) $90,359.70 + ($90,359.70 x .0204) = $92,203.04 (sixth year)
7) $92,203.04 x .0204 = $1880.94 (total interest in the seventh year)
8) $1880.94 x (2/12) = $313.49 (total interest for two months in the seventh year)
9) $313.49 + $92,203.04 = $92,516.53 (total back pay award)

abuse of discretion.  Saulpaugh, 4 F.3d at 145.

As explained above, Bergerson was able to obtain comparable alternative employment; to wit, her full-time position at SLPC.  She has a GED and was able to secure other employment to supplement her income.  Defendant cannot be held financially responsible for plaintiff's inability to maintain her employment at Birnie Bus or the School for the Deaf.  Indeed, it was plaintiff's affirmative conduct that ended these periods of employment.  Plaintiff's assertion that the emotional distress caused by her termination from CNYPC perpetually prevents her from maintaining employment is unpersuasive.  As noted above, the testimony of plaintiff's family therapist is not credible with respect to this issue. Moreover, plaintiff only occasionally sought mental health counseling and sporadically requires prescription medication.  In short, there is nothing about her physical or mental condition to prevent her from obtaining comparable employment in the future.

Further, the $92,516.53 that will be awarded in back pay is sufficient to make plaintiff whole.  Therefore, her request for front pay will be denied.

### C.  Attorneys' Fees and Costs

Costs other than attorneys' fees "should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d).  Title VII authorizes a district court to award reasonable attorneys' fees to a "prevailing private party."  Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009).  Attorneys' fees are awarded by determining a presumptively reasonable fee, reached by multiplying a reasonable hourly rate by the number of reasonably expended hours.  See Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009).  The reasonable hourly rate should be "'what a reasonable, paying client would be willing to pay' given that such a party wishes

'to spend the minimum necessary to litigate the case effectively.'" Id. (quoting Arbor Hill

Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110, 112, 118 (2d

Cir. 2007), amended on other grounds by 522 F.3d 182 (2d Cir. 2008)).

The present prevailing hourly rates in this district, which are what a reasonable paying

client would be willing to pay, are $210 for an experienced attorney and $80 for a paralegal.

Lewis v. City of Albany Police Dep't, 554 F. Supp. 2d 297, 298–99 (N.D.N.Y. 2008), aff'd, 332

F. App'x 641 (2d Cir. 2009).   "Additionally, it is customary in this district to allow only one-half

the hourly rate for travel time." Id. at 299.  Further, attorneys' fees should be limited to those

claims for which the plaintiff achieved success.  Barfield v. N.Y.C. Health & Hosps. Corp.,

537 F.3d 132, 152 (2d Cir. 2008).  Therefore, unsuccessful claims must be eliminated and

the attorneys' fees reduced appropriately.  Id.

Plaintiff seeks $19,326.50 in attorneys' fees and $842.50 in costs related to her

appeal.  Her calculations are based on a $250 hourly rate for an experienced attorney, an

$85 hourly rate for a paralegal, and a $125 hourly rate for travel.  Defendant argues that

plaintiff is not entitled to attorneys' fees because she did not "prevail" on her appeal as the

Second Circuit affirmed both the dismissal of her state law claims and the $210 hourly rate

for attorneys' fees.  Defendant also notes that it agreed "remand is appropriate to enable the

district court to clarify its post-trial rulings as to compensatory damages and backpay."  See

Bergerson, 652 F.3d at 281.

The parties' submissions have been reviewed and their arguments considered.

Defendant only agreed to a remand because plaintiff appealed to the Second Circuit.  To that

extent, plaintiff "prevailed" on her appeal.  However, plaintiff did not prevail on the remainder

of her appeal as the Second Circuit affirmed the dismissal of her state law claims and upheld the $210 hourly rate for attorneys' fees.  Therefore, any attorneys' fees will be reduced by fifty percent.  The prevailing hourly rates of $210 for an experienced attorney, $80 for a paralegal, and $105 for travel will be applied.  The costs and legal hours claimed by plaintiff—65.9 hours for attorney Bosman, 14.9 hours for her paralegal, and 13 hours of travel—are reasonable.

Accordingly, plaintiff is entitled to reasonable attorneys' fees of $8198.00 and costs of $842.50, for a total of $9040.50.

## IV.  CONCLUSION

Plaintiff is entitled to an award of back pay from the date of her termination from CNYPC (January 31, 2006) until the date on which she voluntarily resigned from SLPC for personal reasons (September 26, 2007).  The parties have stipulated that reinstatement is an inappropriate remedy in this case.  Because the award of back pay makes her whole, and she retains the ability to obtain comparable alternative employment, plaintiff will not be awarded any front pay.  Finally, plaintiff will be granted reasonable attorneys' fees and costs related to her appeal.

Therefore, it is

ORDERED that

1.  Plaintiff is awarded back pay in the total amount of $92,516.53, including interest and compounded annually;

2.  Reinstatement is DENIED as moot;

3.  Plaintiff's request for front pay is DENIED;

4.  Plaintiff is awarded attorneys' fees and costs in the total amount of $9040.50;

5.  As plaintiff has prevailed on this determination of back pay, she may seek reasonable attorneys' fees and costs related to the October 5, 2011, hearing by filing a motion on or before April 17, 2012; and

6.  Defendant shall file any response to plaintiff's motion on or before May 1, 2012.

IT IS SO ORDERED.

The Clerk of the Court is directed to enter a supplemental judgment in favor of plaintiff and against the defendant in the total of $101,557.03, with back pay in an amount of $92,516.53 including interest and attorneys' fees and costs in the amount of $9040.50.

_____
United States District Judge

Dated: April 3, 2012
       Utica, New York.